PER CURIAM.
 

 Raymond M. Williams [“Williams”] appeals a final order entered by the Public Employees Relations Commission [“the Commission”], upholding the Department of Transportation’s [“the Department”] discharge of Williams for violating agency rules and for conduct unbecoming a public employee.
 

 Williams was hired by the Department on November 19, 2003, as a project inspector working out of the Department’s Palat-ka Construction office. He was employed in that position until discharged on December 9, 2008, for violating the Department’s Violence Free Workplace policy.
 
 [1]
 
 Nine
 
 *832
 
 teen employees work in the Palatka office, one of whom was Patrick Feher [“Feher”], also a project inspector.
 

 Williams’ discharge arose out of an incident that took place on December 3. The Resident Engineer, William Craig [“Craig”], and other employees were discussing the Department’s discharge of an employee in another office for personal use of his work computer and the need for a meeting with all Palatka employees to discuss what occurred. As they were discussing the issue, Williams and Feher arrived at the office. The day before, Feher had found on the office printer a copy of a hunter education certificate made out to Williams. Feher told Jason Johns, another Department employee, that he was going to contact district headquarters in Lake City about Williams using the work printer for personal reasons. When asked by Jason Johns why Feher would do that, Feher responded: “I do not like that big headed f* *ker.”
 

 Feher then informed the group discussing the other employee’s discharge that Williams had used the Department’s equipment to print his certificate and that he was going to inform “Lake City” about the improper use. Williams overheard Feher’s remark and told Feher to mind his own business because he had printed the certificate “on my lunch hour.” The Palat-ka office policy permits employees to make limited use of office equipment for personal matters before work, during lunch, or after work.
 

 Feher responded that it was not appropriate to use office equipment at lunch, and said he was going to prove it by contacting Lake City. He then called someone in the district office and left a message on an answering machine. He returned to the office where Williams was located and announced, “You’ll be getting a call later” and left.
 

 After Feher departed, Williams said within earshot of other employees: “If he gets me fired, I’ll get my gun and blow his guts out.” Even though he did not feel an actual threat had been made, Craig directed all of the observers to write reports of the incident. Williams, himself, haiidwrote a statement that day, admitting that he made the statement, apologizing for his behavior and explaining that he “[l]ost [his] cool.” Feher later learned of Williams’ statement from a co-worker and demanded to Craig that Williams be disciplined. Williams was subsequently discharged.
 

 
 *833
 
 Williams appealed his termination to the Commission and a hearing officer was appointed to conduct a hearing. After the hearing was conducted, the hearing officer, in a proposed order, set forth the facts and concluded that Williams’ statement was “a verbal exclamation of his frustration with Feher, not an actual threat to harm him” and recommended that Williams be reinstated with back pay and benefits. The Department filed exceptions to the proposed order, and, by final order rendered March 27, 2009, the Commission modified several of the findings of fact, rejected the hearing officer’s analysis of the dispositive legal issues, and concluded that the Department had cause to discharge Williams.
 

 Williams contends on appeal that the Commission erred in rejecting the hearing officer’s conclusion that the Department did not have cause to discipline Williams because Williams’ statement was not an actual threat. Specifically, Williams challenges the Commission’s rejection of the hearing officer’s finding in paragraph 6 of the proposed order that no one was frightened by Williams’ statement or that the employees who witnessed the statement believed the statement to be a threat:
 

 6. After Feher departed and was out of hearing range, Williams stated, “If he gets me fired, I’ll get my gun and blow his guts out.” Based on all the witnesses’ recollections, I find that Williams was angry but did not raise his voice when he made the statement. Resident Engineer Craig had been on the telephone and heard raised voices in the earlier discussion. After he completed his call, he walked into the room and spoke to Williams, who calmed down immediately. Craig did not believe Williams was seriously threatening anyone; none of the witnesses who observed the incident believed that Williams was threatening anyone. None of the witnesses who appeared at the hearing are afraid of working with Williams.
 

 The Department’s exception to this finding asserted that the witnesses testified only that they did not feel personally threatened and pointed out that the persons who heard the threats had no reason to be fearful because Williams was not threatening them. Instead, Williams’ comments were directed to Feher. The Commission granted the Department’s exception six, stating:
 

 In exception six, the Agency contends that the hearing officer’s statement in finding six, sentence five, that none of the witnesses who observed the incident believed that Williams was threatening anyone, is not supported by competent substantial evidence. Our review of the record reveals that the witnesses who observed the incident testified that they were not scared of Williams or afraid to be around him. None stated that they did not believe Williams was threatening anyone. Thus, this exception is granted, and finding six is modified accordingly.
 

 After reviewing the testimony, we find no error in the granting of the exception on the modification of finding 6. Nor do we find merit in the remaining issues raised on appeal. The Commission’s conclusion concerning the evidence is supported by the hearing officer’s findings of fact as modified and adopted by the Commission. There is evidentiary support for the Commission’s conclusion that the Department had cause to discharge Williams.
 

 AFFIRMED.
 

 GRIFFIN, SAWAYAand LAWSON, JJ., concur.
 

 [1]
 

 . The Department’s Violence-Free Workplace Environment policy provides in pertinent part:
 

 OBJECTIVE:
 

 It is the Department’s intent to maintain a violence-free workplace by creating a business environment with a zero tolerance of behavior which leads to harassment and violence. This includes domestic violence
 
 *832
 
 as defined in Section 741.28, Florida Statutes. This policy is established to provide for a productive work environment and the individual welfare and security for all Florida Department of Transportation employees, customers, vendors, contractors and other person(s) present on official FDOT business. [Emphasis original]
 

 POLICY:
 

 It is the Department's intent that no person shall harass or harm employees, members of the general public, officials, contractors, vendors or customers of the Department in State offices, facilities, work sites, vehicles, or while conducting State business by exhibiting verbally or physically abusive or harassing behavior including, but not limited to the following: [Emphasis original]
 

 VERBAL ABUSE:
 

 Threats toward persons or property; the use of vulgar or profane language toward others; disparaging, derogatory comments or slurs; intimidation, or name-calling.
 

 [[Image here]]
 

 DISCIPLINARY ACTION:
 

 Any violation of this policy by FDOT employees will be grounds for disciplinary action in accordance with disciplinary standards and disciplinary action provisions contained in Department Procedure No. 250-012-011, Disciplinary Action. Violence by non-FDOT employees should be promptly reported to management or law enforcement authorities, as appropriate.